UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEWELDEEN M. HARLAND, | CASE NO. 1:18CV617 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Jeweldeen M. Harland ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on June 28, 2018, Plaintiff asserts that the administrative law judge ("ALJ"): (1) failed to give appropriate weight to the opinion of her treating physician; and (2) erred by finding that her testimony was not fully credible. ECF Dkt. #12. Defendant filed a response brief on July 30, 2018. ECF Dkt. #13. Plaintiff filed a reply brief on August 13, 2018. ECF Dkt. #14.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

On August 20, 2014, Plaintiff protectively filed an application for DIB alleging an onset date of August 15, 2014. ECF Dkt. #11 ("Tr.") at 20, 153.[2] The application was denied initially and upon reconsideration. *Id.* at 69, 104. Plaintiff then requested a hearing before an ALJ,

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather than the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

which was held on December 9, 2016. *Id.* at 38. On January 6, 2017, the ALJ issued a decision denying disability benefits. *Id.* at 17. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the decision issued by the ALJ on January 6, 2017, stands as the final decision.

Plaintiff filed the instant suit on March 16, 2018. ECF Dkt. #1. On June 28, 2018, Plaintiff filed a brief on the merits. ECF Dkt. #12. Defendant filed a response brief on July 30, 2018. ECF Dkt. #13. Plaintiff filed a reply brief on August 13, 2018. ECF Dkt. #14.

## II. MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

Plaintiff was taken to the emergency room in late 2013 due to a mental disturbance and was assigned a global assessment of functioning ("GAF") score of fifteen.[3] Tr. at 265. Following treatment, Plaintiff was assigned a GAF score of forty-five when she was released after stabilization. *Id.* at 266. In March 2014, Plaintiff received inpatient care after intentionally overdosing on her medications. *Id.* at 236. Plaintiff was assigned a GAF score of ten upon entry and a GAF score for forty-five when she was released after five days of treatment. *Id.* at 237.

In December 2014, Plaintiff began treatment with Kristine Packo, M.D., and continued treatment with Dr. Packo throughout the relevant period.[4] Tr. at 306. Dr. Packo's records noted that Plaintiff had a history of depression and hallucinations, and a diagnosis of schizoaffective disorder. Tr. at 282-309, 311-13, 322-37). Notes from Dr. Packo discussed Plaintiff's poor response to treatment and encouraged more intensive therapy. *Id*. Dr. Packo's examination notes also discussed Plaintiff's depressed mood and that her perception was affected by auditory

---

[3]Plaintiff begins her discussion of the medical evidence by asserting that her mental health impairments pre-date her alleged onset date of August 15, 2014. ECF Dkt. #12 at 2.

[4]Dr. Packo later changed her last name to "Marinelli."

hallucinations, and that her judgment, insight, attention, and concentration were less than normal. *Id*.

Plaintiff began therapy at Coleman Behavioral Heath ("Coleman") in February 2015. Tr. at 338. Treatment notes from a therapy session held on February 18, 2015, stated that Plaintiff reported a good relationship with her husband, father, stepsister, and stepmother. *Id.* at 339, 353, 355. Plaintiff indicated that she was not in the labor force and checked the box for "homemaker" rather than the box for "disabled." *Id.* at 341. Additionally, Plaintiff marked that she did not want to work and was unconcerned that employment would affect her benefits. *Id.* Plaintiff reported that she had smoked marijuana every other day, but quit one week prior to the session. *Id.* at 345. Plaintiff was diagnosed with depression with psychotic features and assigned a GAF score of 49. *Id.* at 355-56.

On March 20, 2015, Plaintiff appeared for the first of two counseling sessions with Arielle Riutort.[5] Tr. at 358. It was noted that Plaintiff: was well groomed; was cooperative; maintained average eye contact and activity; displayed clear speech; reported no delusions; reported no self abuse; reported no hallucinations; displayed a logical thought process; displayed a memory impairment; and was of average intelligence. *Id.* at 358-59. On March 25, 2015, Plaintiff visited Dr. Packo. *Id.* at 322. Plaintiff reported that she had recently used marijuana, which worsened her mood symptoms and that she had sought emergency care. *Id.* at 323. Continuing, Plaintiff reported "overall feeling stable in mood and anxiety," denied psychosis, and stated that she avoided large groups of people. *Id.* In April 2015, Plaintiff noted worsening mood symptoms, but denied hallucinations or paranoia. *Id.* at 373-74. Dr. Packo concluded that Plaintiff was stable and continued her medications. *Id.* at 375.

In August 2015, Dr. Packo noted that Plaintiff showed a "fair" response to treatment. Tr. at 387. Plaintiff again reported "overall feeling stable in mood," denied auditory hallucinations, stated that she was getting along well with her husband, and indicated that she was considering

---

[5]Ms. Ruitort's credentials are unknown as her signature line indicates "[n]o primary credential." Tr. at 360-61.

returning to work in a limited capacity. *Id.* at 388. Dr. Packo again concluded that Plaintiff was stable and continued her medications. *Id.* at 389. On November 17, 2015, Dr. Packo noted that Plaintiff was responding well to her current treatment. *Id.* at 367. Regarding her auditory hallucinations, Plaintiff indicated that the hallucinations had resolved since she stopped working. *Id.* Plaintiff reported that she was feeling stressed due to her husband losing his job, but stated that she was not experiencing worsening psychological symptoms. *Id.*

On January 18, 2016, Plaintiff visited Dr. Marinelli (formerly Dr. Packo). Tr. at 391. Dr. Marinelli noted that Plaintiff was responding well to her current treatment. *Id.* Plaintiff reported that she was working again and denied any worsening mood symptoms. *Id.* Dr. Packo did note one reported disassociate episode during which Plaintiff forgot to pick her husband up from work and could not remember the events surrounding the incident. *Id.* In June 2016, Dr. Packo again noted that Plaintiff was responding well to her current treatment. *Id.* at 394. Plaintiff reported that she had changed jobs and was working at a fast-food restaurant so that she could work fewer hours and during the daytime. *Id.* Dr. Packo noted that Plaintiff was experiencing excessive worry and feeling on edge, but no worsening mood symptoms, psychosis, or mania. *Id.* On September 19, 2016, Dr. Packo again indicated that Plaintiff was responding well to her current treatment. *Id.* at 398. The mental-status examination findings regarding Plaintiff's condition were relatively unchanged. *Id.*

### B. Testimonial Evidence

The ALJ held a hearing on December 9, 2016, with Plaintiff, her attorney, and vocational expert ("VE") present. Tr. at 38. On examination by the ALJ, Plaintiff testified that she was married and had a driver's license. *Id.* at 43-44. When asked why she was unable to work, Plaintiff stated that she became "stressed out around people" and would then begin hearing voices. *Id.* at 47. Plaintiff denied having any physical ailments. *Id.* The ALJ asked Plaintiff about her treatment and she testified that she saw a psychiatrist every two to three months and that her prescribed medications were helping her condition. *Id.* at 47-48. Plaintiff also stated that she had memory problems. *Id.* at 48. When asked to describe her typical day, Plaintiff

testified that she: watched television; cleaned her house; cooked with her husband; and washed the dishes with her husband. *Id.* at 49. Plaintiff also stated that she could pay her bills. *Id.*

Next, Plaintiff was questioned by her attorney. Tr. at 49. Plaintiff testified that she had attempted suicide in 2013 and that there had been no attempts or suicidal thoughts since that time. *Id.* at 52. Continuing, Plaintiff stated that she heard voices when stressed that told her to run and hide, and occasionally to harm herself. *Id.* Plaintiff then testified that she left her prior jobs due to stress. *Id.* at 53. When asked about leaving her house, Plaintiff stated that she attended church, but that it made her anxious, and that she did not feel overwhelmed grocery shopping with her husband. *Id.* at 55-56. Plaintiff also stated that she shopped at the mall once every two months. *Id.* at 56. Following Plaintiff's examination by her attorney, the ALJ questioned the VE. Tr. at 57. The VE testified that an individual of Plaintiff's age, education, work experience, and residual functional capacity ("RFC") could not perform her past relevant work, but could perform work as a non-postal mail clerk, garment sorter, and night cleaner. *Id.* at 59-60. Additionally, the VE indicated that these jobs existed in significant numbers in the national economy. *Id.* at 60.

### III.     RELEVANT PORTIONS OF THE ALJ'S DECISION

On January 6, 2017, the ALJ issued a decision finding that Plaintiff was not entitled to DIB. Tr. at 17. The ALJ stated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and had not engaged in substantial gainful activity since August 15, 2014, the alleged onset date. *Id.* at 22. Continuing, the ALJ determined that Plaintiff had the severe impairment of affective disorder. *Id.* The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After consideration of the record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: no exposure to unprotected heights or moving mechanical parts; performing simple, routine, and repetitive tasks, but not at a production-rate pace; simple work-related decisions;

and no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others. Tr. at 24.

The ALJ then stated that Plaintiff was unable to perform past relevant work. Tr. at 27. Next, the ALJ indicated that Plaintiff was a younger individual on the alleged disability onset date, had at least a high school education and could communicate in English, and that the transferability of job skills was not an issue because her past relevant work was unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 15, 2014, through the date of the decision. *Id.* at 28.

## IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## **V. STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI. LAW AND ANALYSIS

### A. Treating Physician Rule

Plaintiff claims that the ALJ failed to provide "good reasons" for assigning less than great weight to Dr. Packo's opinions as required by the treating physician rule.[6] ECF Dkt. #12 at 7. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543,

---

[6]For the purpose of simplicity, the undersigned hereinafter refers to Plaintiff's treating physician as "Dr. Packo" rather than alternating between Dr. Packo and Dr. Marinelli.

551 (6th Cir. 2010).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ).  However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion.  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

      Plaintiff asserts that the factors of 20 C.F.R. § 404.1527(c) support the assignment of "greater weight" to Dr. Packo's opinions.  ECF Dkt. #12 at 7.  Namely, Plaintiff states that the following factors support her position: (1) the length of treatment and frequency of examinations; (2) treatment relationship; and (3) specialization.  *Id.*  Plaintiff avers that Dr. Packo is the psychiatrist who treated her from December 2013 through the relevant time period. Continuing, Plaintiff asserts that Dr. Packo's opinions were consistent with her own mental health exams and with the other examining physicians in the record.  *Id.* at 8.  Plaintiff then states that the notes from Coleman "showed practically identical mental health issues" as Dr. Packo's examination notes.  *Id.* at 9.  Additionally, Plaintiff claims that her two hospitalizations should constitute episodes of decompensation and that the ALJ's reasoning for finding otherwise was incorrect.  *Id.*  Finally, Plaintiff asserts that the GAF scores she was assigned were consistent with Dr. Packo's opinions.  *Id.* at 10-11.

      Defendant contends that the ALJ properly considered Dr. Packo's opinions when assessing Plaintiff's RFC.  EFC Dkt. #13 at 11.  Specifically, Defendant states that the ALJ assigned Dr. Packo's opinions little weight because the mental-health treatment notes failed to document the level of dysfunction and symptoms of extreme limitations that Dr. Packo reported. *Id.* at 12.  Defendant notes that the ALJ found that Plaintiff: displayed largely normal behavior,

-9-

cognition, and thought processes throughout the record; showed mood stabilization with consistent treatment; and did not experience any episodes of decompensation of extended duration. *Id.* (citing Tr. at 26-27).

Regarding Plaintiff's argument that Dr. Packo's opinions were consistent with records from Coleman, Defendant asserts that Plaintiff only underwent an initial assessment and two counseling sessions at Coleman and her counselor noted normal mental-status findings and remarked that Plaintiff was stable. *Id.* at 15 (citing Tr. at 25, 350-51, 358-63). Further, Defendant states that although Plaintiff asserts that Dr. Packo's opinions were consistent with the findings of "other providers," Coleman was the only other provider. *Id.* at 15-16 (citing ECF Dkt. #12 at 8). Defendant also states that despite Plaintiff's claim that she experienced episodes of decompensation, she was not hospitalized during the relevant period and the records show no instances of repeated episodes of decompensation. *Id.* at 16. Finally, Defendant notes that the GAF scores of ten and fifteen that Plaintiff was assigned pre-date the relevant period and occurred while Plaintiff was engaged in substantial gainful activity and that the ALJ considered the GAF scores assigned to Plaintiff during the relevant period. *Id.* at 16-17.

Plaintiff's argument is without merit. First, Plaintiff asserts that the factors of 20 C.F.R. § 404.1527(c) support the assignment of "greater weight" to Dr. Packo's opinion, specifically enumerating the following factors: (1) length of treatment and frequency of examinations; (2) treatment relationship; and (3) specialization . ECF Dkt. #12 at 7. It does not appear that Defendant disputes that Dr. Packo acted as Plaintiff's treating psychiatrist throughout the relevant period. Rather, the Court must determine whether the ALJ provided "good reasons" for assigning less than controlling weight to the opinions from Plaintiff's treating physician.

On March 25, 2015, Dr. Packo issued the first opinion. Tr. at 317. In the area of "Mental Abilities and Aptitudes Needed to Do Unskilled Work," Dr. Packo opined that Plaintiff's ability was "poor to none" in each category. *Id.* Dr. Packo made the same finding in all categories in the area of "Mental Abilities and Aptitudes Needed to Do Semiskilled and Skilled Work." *Id.* at 318. As for "Mental Abilities and Aptitudes Needed to Do Particular Types of Jobs," Dr. Packo opined the Plaintiff's ability was only "fair" regarding: interacting

appropriately with the general public; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness. *Id.* In this same area, Dr. Packo opined that Plaintiff's ability to travel in unfamiliar places was "poor or none" and indicated that she did not know whether Plaintiff could use public transportation. *Id.* Dr. Packo issued a second opinion on November 11, 2016.[7] Tr. at 403. In the decision, Dr. Packo marked the most restrictive option in all categories in the area of "Mental Abilities and Aptitude," and indicated that she was unable to assess Plaintiff's ability to interact with others, perform work tasks, or respond appropriately to work criticism. *Id.* at 403.

> The ALJ addressed both opinions submitted by Dr. Packo as follows:
>
> The undersigned does not give controlling weight to Dr. Packo's opinion described above. Although she treated [Plaintiff], the evidence does not substantiate the extreme degree of restrictions that she described. [Plaintiff] had ongoing hallucinations and depression, but Dr. Packo's own contemporaneous treatment notes describe generally cooperative behavior, coherent thoughts, normal concentration, and normal memory. Moreover, [Plaintiff] did not experience any episodes of decompensation of extended duration during the relevant period, let alone repeated such episodes. Accordingly, the undersigned finds affords little weight to Dr. Packo's assessment.
>
> The undersigned does not afford controlling weight to Dr. Marinelli's assessment. She treated [Plaintiff] but the mental health treatment notes failed to document the level of dysfunction and symptoms that Dr. Marinelli reported. As noted above, [Plaintiff] displayed largely normal behavior, cognition, and thought processes. Additionally, her mood stabilized with consistent treatment and there was no indication of any episodes of decompensation of extended duration. Given the lack of evidentiary support, the undersigned grants little weight to Dr. Marinelli's opinion.

Tr. at 26-27. The ALJ provided "good reasons" for assigning less than controlling weight to Dr. Packo's opinion. When chronologically discussing the medical evidence in the record, consisting almost entirely of Dr. Packo's treatment notes, the ALJ stated that Plaintiff: had a fair response to treatment and her mood stabilized during 2014; presented as cooperative with fair concentration, intact memory, and coherent thoughts; had stable mental status examinations; continued to have a fair response to treatment in November 2014; continued to have a fair response to treatment in March 2015; continued to have a fair response to treatment in August

---

[7] This opinion is signed as Dr. Marinelli and the undersigned refers to it as such in the decision. *See* Tr. at 27, 402.

-11-

2015; exhibited less depression and denied auditory hallucinations; was responding well to treatment despite reports of auditory hallucinations; continued responding well to treatment in January 2016 and was working; continued working part-time in June 2016 without her mood worsening; and displayed a stable condition in September 2016. *Id.* at 25-26.

Prior to assessing the opinions of Dr. Packo, the ALJ discussed the numerous pieces of evidence that were inconsistent with the opinions, almost all of which were taken from Dr. Packo's own treatment notes. The evidence cited by the ALJ supports that conclusion that Plaintiff was not subject to the extreme limitations contained in Dr. Packo's opinions. The ALJ was only required to assign controlling weight to Dr. Packo's opinions if the ALJ found that the opinions were well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson*, 378 F.3d at 544. Here, the ALJ determined that Dr. Packo's opinions were not supported by medically acceptable clinical and diagnostic techniques and were inconsistent with the other substantial evidence in the record. The ALJ met the "good reasons" requirement of the treating physician rule by citing numerous pieces of evidence demonstrating that Dr. Packo's opinion was inconsistent with the other evidence of record. Accordingly, the ALJ did not violate the treating physician rule.[8]

### B. Credibility

Next, Plaintiff claims that the ALJ erred by finding that she was not fully credible and that the credibility determination was not supported by substantial evidence. ECF Dkt. #12 at 11-12. Plaintiff asserts that the ALJ based the credibility determination on "canned examination" notes showing stabilization of Plaintiff's symptoms. *Id.* at 12. According to Plaintiff, the examination notes support the consistency of her statements and testimony as the notes show poor responses to treatment, more intensive therapy, a depressed mood, and hallucinations. *Id.* at 12-13.

---

[8]Plaintiff also briefly asserts that she experienced episodes of decompensation, however, a review of the record shows that those alleged episodes of decompensation were outside of the relevant period. *See* ECF Dkt. #12 at 9; Tr. at 237-38, 265-66.

-12-

Defendant contends that Plaintiff does not point to any errors in the ALJ's fact-finding and instead asks the Court to re-weigh the evidence. ECF Dkt. #13 at 18. Continuing, Defendant correctly notes that the ALJ is responsible for evaluating the consistency of a claimant's statements with the record. *Id.* (citing *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013); *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511)). Defendant states that the ALJ cited evidence in support of the findings that Plaintiff: stabilized her mental health during the relevant period; had ongoing depression and anxiety but her hallucinations had subsided and she behaved appropriately; and was generally stable and displayed linear thought processes. *Id.* at 19 (citing Tr. at 27). Additionally, Defendant avers that the ALJ properly noted that examination findings were inconsistent with Plaintiff's allegations.

Plaintiff's argument is without merit because the ALJ's finding that her alleged symptoms and limitations were only partially consistent with the evidence is supported by the record. The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole*, 661 F.3d at 937. The same medical evidence that supports the ALJ's treatment of Dr. Packo's opinions, as stated above, supports the credibility determination. Further, Plaintiff's argument ignores the medical records showing that her auditory hallucinations were largely absent during the relevant period and that mental-status examinations routinely showed normal or minimal findings. *See* Tr. at 323-24, 327, 350-52, 362-63, 367-68, 388-89, 391, 394, 396, 398, 400. Moreover, Plaintiff fails to address the fact that she was working during portions of the relevant period. *See id.* at 391, 394. For these reasons, the ALJ's credibility determination is supported by substantial evidence.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: January 28, 2019              */s/George J. Limbert*
                                    GEORGE J. LIMBERT
                                    UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).